# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| BRYCE LANE STOUTMEYER, | Case No.: 4:18-cv-00532-REB |
| Petitioner, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Respondent. | |

Pending is Petitioner Bryce Lane Stoutmeyer's Petition for Review (Dkt. 1), appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits and supplemental security income. *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On November 19, 2014, Petitioner Bryce Lane Stoutmeyer ("Petitioner") protectively applied for Title II disability and disability insurance benefits. (AR 15.) He also protectively filed for Title XVI supplemental security income on March 31, 2015. (*Id.*) Petitioner alleged disability beginning October 20, 2014. (*Id.*) His claims were denied initially on June 17, 2015 and then again on reconsideration on October 28, 2015. (*Id.*) On November 9, 2015, Petitioner timely filed a written request for hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner testified by video from Pocatello, Idaho at a hearing held on July 20, 2017 in Billings Montana. (*Id.*) Impartial vocational expert Delane H. Hall also appeared and testified at the hearing. (*Id.*)

On October 2, 2017, ALJ Michele M. Kelley issued a decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act during the period from his alleged onset date through the date of the decision. (AR 30.) Petitioner timely requested review from the Appeals Council on November 20, 2017. (AR 235). On September 26, 2018, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted administrative remedies, Petitioner filed this case. He contends that "the conclusions and findings of the [Respondent] are erroneous, not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 3 (Dkt. 1). Petitioner argues that the ALJ erred (1) in finding Petitioner's impairments do not rise to Listing-level severity; (2) in improperly weighing medical opinions; (3) in improperly discrediting non-medical testimony; and (4) in finding Petitioner is capable of work in the national economy. *See generally* Pet'r's Mem. (Dkt. 16). Petitioner asks that the case be reversed and remanded for an immediate award of benefits. *Id.* at 20.

## II. <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

# III. DISCUSSION

## A.    Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from his alleged onset date of October 20, 2014 through the date of the ALJ's decision. (AR 17.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it

does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that, as of the date of her decision, Petitioner had the following severe impairments: "degenerative disc disease status/post discectomy, and coronary artery disease."  (AR 17.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, his claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (AR 19–21.)

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work he performed within the last 15 years or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant

to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ

found that Petitioner had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) (he can push, pull,
> lift, or carry 20 pounds occasionally and 10 pounds frequently and, in an 8-hour
> workday, he can stand and/or walk for 6 hours and sit for 6 hours) with the
> following additional limitations: He can frequently climb ramps or stairs, balance,
> stoop, kneel, crouch, or crawl, and he can occasionally climb ladders, ropes, or
> scaffolds. With his dominant right upper extremity, he uses a cane for balance and
> ambulation.

(AR 21.)  Based on this RFC, the ALJ further found that Petitioner was capable of performing

past relevant work as a customer service representative.  (AR 28–30.)

In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of his impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do

other work and meets the duration requirement, he is disabled.

Because of the ALJ's finding at step four of the sequential process, she did not need to

make a finding at step five.  However, the ALJ did make a step-five finding in the alternative.

The ALJ found that Petitioner's RFC is compatible with work as an "office helper," "storage

rental clerk," and "parking lot attendant."  (AR 29.)  The ALJ further found that these jobs exist

in significant numbers in the national economy.  (*Id.*)

Based on the finding that Petitioner could perform past relevant work and/or jobs that

exist in significant numbers in the national economy, the ALJ ultimately concluded that

Petitioner "has not been under a disability, as defined in the Social Security Act," from the alleged onset date through the date of the ALJ's decision.  (AR 30.)

## B.     Analysis

Petitioner raises four primary issues with the challenged decision.  First, he argues the ALJ erred by finding that his impairments do not meet Listing-level severity.  Second, he argues the ALJ erred by improperly weighing the opinions of medical sources.  Third, he argues the ALJ erred by discrediting the testimony of Petitioner and his wife.  Fourth, he argues the ALJ erred by finding he can perform work in the national economy.  *See generally* Pet'r's Mem. (Dkt. 16).  Each argument will be addressed in turn.

### 1.   The ALJ Did Not Err in Finding Petitioner's Impairments Are Not of Listing-Level Severity.

#### A.  Petitioner's Mental Limitations.

Petitioner contends the ALJ's finding that he does not have an impairment or combination of impairments that meets or equals a Listing is not supported by substantial evidence.  Pet'r's Mem. 11–15 (Dkt. 16).  The ALJ found that Petitioner's degenerative disc disease and coronary artery disease are severe impairments.  (AR 17.)  But Petitioner argues that the evidence shows, and the ALJ should have found, that he also suffers from the severe impairments of disorders of the spine, ruptured discs, herniated discs, chronic pain, chronic depression, anxiety, ADHD, non-verbal learning disorder, spectrum disorder, acid reflux, heart attack, hiatal hernia, and kidney stones.  Pet'r's Mem. 3 (Dkt. 16).  Petitioner argues the ALJ did not properly consider the combination of all his impairments, as required by law.  *Id.* at 12.

Petitioner cites evidence that he was being treated by Dr. Gardner and Dr. Martin for anxiety and depression.  *Id.*  In both her treatment notes and an opinion letter, Dr. Gardner documented diagnoses of generalized anxiety disorder, major depressive affective disorder, and

ADHD. (AR 689, 690, 692.) She echoed these diagnoses on a "Mental Residual Functional Capacity Statement" (MRFC) form she completed. (AR 797–804.) Dr. Martin, Petitioner's primary care provider, also diagnosed him with chronic depression and ADHD and he documented anxiety as a symptom. (AR 789.) Petitioner contends that these records, in conjunction with his own testimony at the hearing, show he has severe mental impairments the ALJ failed to properly consider. Pet'r's Mem. 13 (Dkt. 16).

The ALJ's decision was not silent with respect to Petitioner's ADHD, depression, or anxiety. The decision stated:

> The claimant's medically determinable mental impairments of attention deficit hyperactivity disorder ("ADHD"), anxiety disorder, and depression, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

(AR 18–19.)

In these arguments, Petitioner is critical of what he apparently contends were constraints imposed by the ALJ upon his opportunity to make his case at the hearing. He does not assert outright that the ALJ erred by "limiting" his testimony, but he clearly implies that such constraints support his contention that the ALJ failed to properly consider his mental impairments. However, the hearing transcript supports the ALJ's finding on the severity of Petitioner's mental impairments. The ALJ said "I've seen this evidence. So, it's really not necessary to duplicate what I've seen. But how are these things affecting Mr. Stoutmeyer? How have they been preventing him from working? That's what's really important." (AR 54.)

This Court acknowledges that the hearing was conducted on a tight time schedule. At one point, the ALJ told Petitioner's counsel "we have five minutes before we need to move on." (AR 65.) Nonetheless, his counsel specifically questioned Petitioner regarding mental health limitations: "Let's talk about those mental health issues. You suffer from depression and anxiety. Can you describe how those conditions limit your ability to work?" (AR 69.) Petitioner answered by referencing difficulties with motivation, sleep, and confidence and that he had difficulty concentrating or staying focused. (AR 69–70.) Thus, Petitioner was able to discuss the impact of his mental limitations on his ability to do basic work activities.

An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Otherwise, it is not severe. 20 C.F.R. §§ 404.1522, 416.922. Here, the ALJ's focus on the *impact* of Petitioner's mental health limitations, rather than on the diagnoses themselves, was consistent with the applicable legal standard. Moreover, the ALJ discussed in nearly a page of her decision her findings that Petitioner suffers no more than mild limitation in each of the "four broad functional areas" referenced in the quoted paragraph.

Petitioner has not pointed to any flaw in the ALJ's findings related to the severity of his mental limitations. He does not challenge the ALJ's "paragraph B" findings. He does not point to any evidence that his mental limitations affect his ability to do basic work activities. Nor does he argue that his hearing testimony could only lead to a finding of more than mild limitations in any of the four broad functional areas. More fundamentally, there is no argument or evidence that would tend to show that the ALJ's finding on this issue was not supported by substantial evidence. Accordingly, he has not shown the ALJ erred by finding Petitioner's limitations of ADHD, depression, and anxiety as less than severe.

Petitioner lists other impairments he contends are severe, but he does not support them with argument or evidence.  They will therefore not be considered here.

**B.  Petitioner's Spine Disorders.**

Petitioner also describes degenerative disc disease and other disorders of his spine that he contends meet or equal the criteria for Listing 1.04.  Pet'r's Mem. 13–15 (Dkt. 16).  He focuses on paragraph "A" under subsection 1.04 of the Appendix, which in context provides as follows:

> 1.04    Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § 404 Appendix 1, Part A, Listing 1.04.  To meet a listing, a claimant's medically determinable impairment must satisfy "all of the criteria" of the listing.  20 C.F.R. §§ 404.1525(d), 416.925(d).  To equal a listing, a claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  Such evidence "must show that [a claimant's] impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months."  20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4).

Petitioner discusses several relevant medical records in significant detail, documenting the history of his diagnoses and treatments of his degenerative disc disease.  Pet'r's Mem. 13–15 (Dkt. 16).  He describes MRIs in October 2014 and April 2015 MRI showing a disc protrusion causing "a high-grade spinal stenosis and significant compression and displacement of the L4 nerve roots at the cauda equina."  *Id.* at 13.  He underwent a discectomy surgery in May 2015.

(AR 722–723.)  Contemporaneous treatment notes interpreting follow-up MRIs in July and

August 2015 do not mention any nerve root compression, in contrast with the pre-surgery MRI.

(AR 748–749, 780–784, 709.)  However, he did continue to suffer from pain and weakness and

several times he had a positive straight-leg raising test.  Petitioner contends these records

establish he met or equaled Listing 1.04 even after his May 2015 surgery.

Respondent disagrees, noting that Petitioner's surgery – which took place less than 12

months after his alleged onset date – improved his condition by eliminating nerve root

compression.  Because nerve root compression is a requirement for Listing 1.04A, Respondent

argues, Petitioner's medical records failing to document such compression post-surgery mean he

cannot show he met the Listing requirements.  Resp't's Mem. 7 (Dkt. 18).

The Court agrees.  Petitioner has not shown that his degenerative disc disease included

nerve root compression under Listing 1.04A for the requisite 12-month period.  Notwithstanding

other evidence of spinal problems, the absence of clinical evidence of nerve root compression

after the surgery intended to alleviate that condition meant, inescapably, that he did not meet the

Listing requirements.[1]  Although Petitioner argues in the alternative that the evidence shows he

at least medically equaled Listing 1.04A, he has not shown how his impairment rises to the same

severity level as an impairment that meets the Listing.

### C.  Mental Impairment Listings 12.04 and 12.06.

Petitioner concedes the evidence does not satisfy the requirements of Listing 12.04

(depressive, bipolar and related disorders) or Listing 12.06 (anxiety and obsessive-compulsive

---

[1] Even if the post-surgery MRIs had shown nerve root compression, it is not clear that
Petitioner would have met the Listing because he did not cite specific evidence showing
"limitation of motion of the spine" or "motor loss … accompanied by sensory or reflex loss,"
both of which are also requirements of Listing 1.04A.

disorders).  He contends, however, that "the weight of those records" in his case show that his impairments are medically equal to each of those listings.  Pet'r's Mem. 15 (Dkt. 16).  He cites a record showing he experienced "a depressed mood, anxiousness, anhedonia, insomnia, fatigue/loss of energy, feelings of guilt and worthlessness or guilt, and impaired concentration." *Id.* (citing AR 750–752).

Both Listing 12.04 and Listing 12.06 require "*[e]xtreme* limitation of one, or marked limitation of two" of the so-called "paragraph B" criteria.  (Emphasis added.)  As discussed *supra*, the ALJ found no more than mild limitation in each of the four paragraph B criteria and Petitioner did not directly challenge those findings.  Nor does he explain or support his otherwise unanchored belief that his mental impairments medically equal an extreme limitation of one or marked limitation of two of the paragraph B criteria.  Accordingly, he has not established the ALJ erred when finding that he does not meet or medically equal these Listings.

### D.  Petitioner's Combination of Impairments.

Petitioner contends that the records, including opinions of his doctors and his own testimony, substantiate the severity of Petitioner's limitations and show that he cannot perform work-related tasks.  Pet'r's Mem. 15 (Dkt. 16).  He argues that "[t]he ALJ failed to consider the totality of these impairments together," but he does not explain how.  *Id.*

The ALJ described her obligation to consider the severity of Petitioner's impairments, including in combination, both when evaluating the severity of any impairments (or combination of impairments) and when concluding whether any of Petitioner's impairments or combination of impairments meets or medically equals a Listing.  (AR 16.)  Elsewhere, the ALJ made specific reference to considering Petitioner's impairments in combination: "The claimant's medically determinable mental impairments of attention deficit hyperactivity disorder ("ADHD"), anxiety

disorder, and depression, *considered singly and in combination*, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere…." (AR 18–19 (emphasis added).)  Moreover, the ALJ expressly concluded that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of [a] listed impairment…" (AR 19.)

The ALJ's description of how she considered the combination of Petitioner's impairments is sparse, but there is enough reasoning and explanation present to support that she did consider Petitioner's impairments in combination.  Regardless, Petitioner has not articulated how, as he contends, consideration of his impairments in combination would have yielded a different result.

Petitioner has not shown the ALJ erred in her analysis or explanation of the severity of his impairments.

### 2.  The ALJ Did Not Err in Weighing Medical Opinions.

Next, Petitioner contends the ALJ erred in giving greater weight to the opinions of non-treating medical sources than to the opinions of Petitioner's treating providers.  Pet'r's Mem. 16–18 (Dkt. 16).  Per Social Security regulations, more weight is generally given to opinions of treating providers than to opinions of other medical sources.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Additionally, an ALJ must give "specific and legitimate" reasons supported by substantial evidence for discounting a contradicted opinion of a treating provider.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  To reject an uncontradicted opinion of a treating provider, an ALJ must state "clear and convincing reasons" supported by substantial evidence for doing so.  *Id.*

Petitioner points out that two treating providers expressed opinions on multiple occasions that Petitioner was incapable of work. Pet'r's Mem. 16–17 (Dkt. 16). According to Petitioner, "Dr. Martin and Dr. Gardner both had years of treating Petitioner and both clearly opined that his mental health impairments precluded him from all work." *Id.* at 17. However, with respect to Petitioner's mental limitations, the ALJ gave less weight to Dr. Gardner's opinions than to the opinions of Dr. Seidenfeld and Dr. Dennis, psychologists who did not treat or examine Petitioner. (AR 25.) The ALJ said the non-treating expert opinions "are based upon a thorough review of the available medical and treatment records and a comprehensive understanding of agency rules and regulations" and that they "are internally consistent and well-supported by a reasonable explanation and the available evidence." (*Id.*) She also found that they "are consistent with most records of nearly every medical psychological evidence source who evaluated the claimant, incidentally or comprehensively, except Dr. Gardner." (*Id.*)

The ALJ gave "minimal weight" to treating provider Dr. Gardner's three opinions, rendered in April and August of 2015, and again in July 2017. (AR 26.) The ALJ first criticized what she described as "vague" language in the first opinion. She then said that the second and third opinions "are not supported by the treatment records." (*Id.*) Further, the ALJ said there were internal inconsistencies between testing Dr. Gardner conducted and the opinions she expressed. "Her own standardized testing reported at 5F [AR 689–701], on which the claimant performed in the average to very superior ranges," the ALJ said, "refutes [Dr. Gardner's] assessments of significant mental limitations in any domain." (*Id.*) The ALJ also discounted the significance and utility of Dr. Gardner's assessment of Petitioner's "Global Assessment of Functioning" score, saying in part that it was a "mere snapshot" rather than a longitudinal

assessment and that such "scores are not intended for forensic purposes, such as assessment of disability." (*Id.*)

Petitioner responds, albeit without reference to support in the record, that the non-treating psychologists (Dr. Seidenfeld and Dr. Dennis) did not have access to Dr. Gardner's counseling records. Pet'r's Mem. 17 (Dkt. 16). The experts did have Petitioner's other medical records, he acknowledges, including Dr. Gardner's psychological evaluation, opinions, and MRFC report. (*Id.*) Petitioner highlights Dr. Gardner's opinions as "supported by the treatment records" and he says the ALJ's rejection of Dr. Gardner's opinions was based on "isolated notes from his records and the opinions of" the experts. (*Id.*)

The non-treating, non-examining experts opined that Petitioner's mental impairments impose no more than mild limitations on his ability to do work. (AR 90, 121). Their reports indicate that "Dr. Gardner's opinion focuses heavily on the claimant's physical pain as a factor, which is not her specialty" and one report indicates that Dr. Gardner's MRFC was "not supported by clinical findings." (AR 92, 124.) Elsewhere, these two experts describe Dr. Gardner's opinion as "rel[ying] heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion. The opinion is without substantial support from other evidence of record, which renders it less persuasive." (AR 95–96, 128.)

But, Petitioner argues, Dr. Gardner's opinions were not vague, and Petitioner refers to what he describes as the specificity of the limitations expressed by Dr. Gardner in the MRFC. Pet'r's Reply 5 (Dkt. 19). Further, Dr. Gardner's opinions were not inconsistent with her own testing, as her testing records acknowledged Petitioner's strengths. *Id.* at 6. Rather, Petitioner argues, Dr. Gardner's opinions were "based upon the areas where Mr. Stoutmeyer has substantial

impairment in light of his entire evaluation and treatment history…. Dr. Gardner offered her opinions on the whole fabric of her treatment and testing." *Id.*

After full consideration of these opposing positions, the Court is persuaded the ALJ properly explained her reasoning for discounting Dr. Gardner's opinions, including by pointing to record evidence that such opinions were not consistent with the overall record or even with Dr. Gardner's own testing. Such explanations satisfied the ALJ's duty to provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Gardner's opinions. Petitioner has not shown that the ALJ erred by finding that Dr. Gardner's opinions were not sufficiently supported by the medical evidence. His alternative interpretation of the record does not call into question the legitimacy of the ALJ's interpretation.

As with Dr. Gardner, the ALJ also gave "minimal weight" to the other treating physician – Dr. Martin – and his three opinions, authored in February, July and August of 2015. (AR 26–27.) The first opinion, the ALJ found, was not specific and of limited relevance because it was offered before Petitioner's discectomy surgery and could not speak to Petitioner's long-term limitations. The ALJ discounted the second opinion because it was offered "only two months after the claimant's back surgery (prior to reaching maximum medical improvement), and it is vague as to the claimant's specific abilities and limitations." (AR 27.) The third opinion was discounted because "Dr. Martin attributes the restrictions to a number of conditions not found to be severe impairments, and he offers no cites to supportive objective findings. Further, the claimant's medical and psychological records indicate his pain was managed with a sedentary activity level (e.g., 9F/1), medication, and physical therapy, and that he had average or better memory, concentration, and cognitive ability, among other things (e.g., 5F)." (*Id.*)

Petitioner, however, contends that radiographic imaging of Petitioner's spine supported Dr. Martin's opinion as to the conditions underlying Petitioner's pain and his treatment for spinal disorders. Pet'r's Mem. 17–18 (Dkt. 16). The ALJ was off base, Petitioner contends, in her reasoning that Petitioner had not reached maximum medical improvement at the time of Dr. Martin's July 2015 opinion: "The ALJ should have weighed and included in her opinion Petitioner's 2016 and 2017 records, which she did not do." *Id.* at 18. In further support of his argument on this point, Petitioner summarizes medical records from July 2016 and April and May 2017 related to pain and weakness in his back and legs. *Id.* at 8.

But, the ALJ's decision expressly references "X-ray and MRI findings from April 2017" as well as "records from July 2016 through May 2017" from a pain and spine specialist. (AR 22, 23–24.) These are the same records Petitioner says the ALJ should have "weighed and included in her opinion." No other records are identified that Petitioner contends should have been considered and discussed by the ALJ.

More fundamentally, Petitioner's argument misses its mark. The issue is whether the ALJ gave specific and legitimate reasons for discounting Dr. Martin's opinions, supported by substantial evidence. If she did, this Court must uphold her treatment of such opinions, if supported, even if the underlying record might allow for a different conclusion. Thus, any argument that the ALJ should have interpreted the record differently is insufficient to justify reversal unless it also establishes that the ALJ's interpretation was not properly supported. Here, Petitioner contends the ALJ erred in her characterization of certain parts of the record being unpersuasive on the grounds of vagueness and inconsistency with other parts of the medical record. Pet'r's Reply 2–3 (Dkt. 19). But Petitioner does not challenge the conclusions drawn by the ALJ based on her focus upon the timing and sequence of the underlying medical

opinions or that one opinion is undermined by the fact that Dr. Martin partially attributes the restrictions to conditions the ALJ found not to be severe. However, the timing and sequence of such opinions are important as to a claimant's long-term limitations because opinions offered before surgery, or only shortly after surgery, either cannot be precise or are inescapably uncertain about a claimant's long-term limitations. Further, the ALJ's finding that some restrictions were attributed to impairments found to be non-severe is also a specific and legitimate reason for discounting Dr. Martin's opinions because it suggests that he may have overstated the limiting effects of Petitioner's impairments.

Finally, the ALJ found that the record indicates Petitioner's pain was managed with a sedentary activity level, medication, and physical therapy, buttressing her conclusion that Dr. Martin's opinions as to the severity or limiting effects of Petitioner's impairments were not supported by the entire record. (AR 27.) Thus, Petitioner has not shown that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for her decision in how to weigh and consider Dr. Martin's opinions.

### 3. The ALJ Erred in Discrediting the Testimony of Petitioner and His Wife.

Petitioner contends the ALJ should not have discredited Petitioner's testimony as to the severity of his impairments (Pet'r's Mem. 18–19 (Dkt. 16)) and should not have discredited his wife's testimony about his limitations. *Id.* at 19. To reject a claimant's testimony about the severity of his symptoms after establishing the existence of an underlying impairment, the ALJ must give "specific, clear and convincing reasons." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

Here, after what she characterized as "careful consideration of the evidence," the ALJ concluded that Petitioner's "statements concerning the intensity, persistence and limited effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22.) She further found that "[a]s to his functional limitations related to his lumbar spine condition, the objective medical findings are consistent with work restrictions, but they do not support the extreme exertional postural limitations the claimant alleged, either before or after his surgery." (*Id.*) Her decision discussed several medical records regarding Petitioner's pain and back issues over a span of multiple years, highlighting some portions that supported Petitioner's testimony about the severity of his limitations and other portions that undermined such testimony. (AR 22–24.) She noted records indicating "lumbar spine tenderness," "discomfort in ambulation and sitting for extended periods," "pain with palpation over the lumbar spine," "some loss of strength and sensation," "continuing weakness and numbness," "new pain and numbness," "decreased active and passive ranges of motion of the lumbar spine," "reduced sensation," "some difficulty standing up," and numerous positive straight-leg tests. (*Id.*) However, she also noted records indicating "claimant ambulated unaided," "no distress," "no atrophy or loss of coordination," "he stood erect with normal coronal and sagittal balance, and he reported dramatic improvement in his leg pain, with some improvement in weakness and numbness," "claimant was doing well, had no real concerns," "generally had full strength in the major muscles innervated by the lumbar spine," and several findings of gait within normal limits, sometimes with and sometimes without a walking stick or cane. (*Id.*)

The ALJ also described perceived inconsistencies between Petitioner's subjective reports and his treating providers' clinical findings, *e.g.*: "[Petitioner] continued to report reduced sensation in the left L5 and S1 nerve root distributions, but he still remained intact to gross

examination and painful stimuli"; "Dr. Martin noted in June 2017 that, although the claimant reported lower extremity weakness, he had full strength on exam. 12F/1–2."[2]  (AR 24.) Moreover, the ALJ noted that Petitioner "had been fairly inconsistent in attend[ing]" physical therapy, "participating in only 39 of his 63 scheduled appointments" between August 2016 and January 2017.  (*Id.*)

Petitioner contends that "the whole of his testimony was highly consistent," particularly with the opinions of his treating providers and his wife.  Pet'r's Mem. 19 (Dkt. 16).  He criticizes the ALJ for "cherry-picking" pieces from the record to unfairly discredit his testimony.  Pet'r's Reply 8 (Dkt. 19).  As an example, he concedes there was some physical improvement after his surgery, but (as evidenced in other medical records) he also had ongoing complaints of pain, weakness, and numbness after surgery.  *Id.*

Petitioner also challenges the ALJ's "anecdotal observation" in her decision that Petitioner sat through 30 minutes of testimony despite testifying that he could sit for no more than 10 minutes at a time.  Pet'r's Mem. 19 (Dkt. 16).  Petitioner argues that he qualified his testimony by saying that the 10-minute maximum sitting duration applied "[b]arring special circumstances" and that the ALJ hearing was just such a special circumstance.  Pet'r's Reply 9 (Dkt. 19) (quoting AR 65).  Petitioner's full testimony, in response to the question "how long can you sit at one time before you need to move around or get up?", was "Barring special circumstances or being in a recliner, eight to 10 minutes.  I mean, here I'm getting to the point where I'm going to have to at least stand up if not stand up and move around shortly."  (AR 65.)

---

[2] This medical record, which is 21F (mistakenly cited as 12F), appears in the record at AR 1344–1345.  Dr. Martin noted that Petitioner's "main concern today is the atrophy in his left lower extremity.  He feels the muscles are shrinking.  He feels a bit weaker on the left side as well."  (AR 1344.)  But Dr. Martin's assessment was "5/5 muscle strength" for both left and right lower extremities.  (AR 1345.)

Petitioner also contends that he "had been moving in the chair throughout the hearing" to help him "push beyond the pain" during the special circumstance of the ALJ hearing.  Pet'r's Reply 9 (Dkt. 19).

The ALJ decision indicates that "[a]lthough the claimant testified he could sit only 8–10 minutes at a time, he had been sitting 30 minutes at the time of that testimony.  He stood shortly after that for less than a minute and sat again for longer than 8-10 minutes, stood again for a short period, then sat again."  (AR 28.)

The Court is persuaded that the ALJ did not provide "specific, clear and convincing reasons" for discrediting Petitioner's testimony about the severity of his limitations.  The ALJ undertook to describe in substantial detail numerous medical records both supporting and undermining Petitioner's testimony.  She also cited medical records where she deemed treating providers' clinical findings inconsistent with Petitioner's subjective reports.  Moreover, the depth of the ALJ's treatment of this issue and the breadth of medical records she covered belie the notion she "cherry-picked" the record to support a particular outcome.

But none of these satisfy the "specific, clear and convincing" standard.  The ALJ's mere recitation of conflicting medical records, which are not uncommon in cases such as this, does not provide a sufficient reason to discount Petitioner's testimony.  Nor is the Court persuaded that any "inconsistencies" the ALJ identified are legally significant, and even if arguably clear such discrete pieces of the entire record are not "convincing."  A practitioner's assessment of "5/5 muscle strength" (AR 1345) is not inherently incompatible with Petitioner's subjective report of atrophy or weakness (AR 1344).  Likewise, a medical finding Petitioner was "intact to gross examination and painful stimuli" is not inherently incompatible with his subjective report of reduced sensation (AR 24).  In both examples, Petitioner describes a relative change in his

symptoms yet the objective medical evidence the ALJ cites provide only a single data point each, rendering them incapable of speaking toward relative changes.

Nor does the Court find that the ALJ's personal observations properly undergird a specific, clear and convincing reason for discrediting Petitioner's testimony. The ALJ observed Petitioner say he could only sit for 10 minutes at a time when he had been sitting for 30 minutes. But he also described that his tolerance for sitting was sometimes greater in "special circumstances," and he now argues that the ALJ hearing – which he characterizes as "a hearing where [his] testimony is the last piece of evidence a judge will consider in approving an application for benefits [he] desperately needs" – is just such a special circumstance. Pet'r's Reply 9 (Dkt. 19). A social security hearing before an administrative law judge is an unusual and stress-inducing event in any claimant's life and even though there may also be corroborative information about eligibility questions (either pro or con) to be drawn from observations made by the ALJ about the claimant, it would be also unusual for any such observation to justify discounting other, more abundant, evidence in the record supporting the claimant's testimony about his limitations. That evidence here does not justify the use of or weight given by the ALJ. Hence, the Court is not persuaded the ALJ's reasoning satisfied the "specific, clear and convincing" standard.

Separately, Petitioner contends the ALJ erred by discrediting two lay opinions of his wife, Cortina Stoutmeyer. Pet'r's Mem. 19 (Dkt. 16). An ALJ must provide a "germane reason" to reject lay witness evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ considered function reports Ms. Stoutmeyer provided dated April 2015 and September 2015. (AR 27.) The ALJ said such reports deserved only "minimal weight" because, she concluded, "they assert remarkably similar observations that appear to be copied from the first report to the

second one" – despite the fact that Petitioner's back surgery, which improved his condition, occurred between the reports. (*Id.*) That is, the ALJ found the reports inconsistent with the medical records and with each other because they did not describe an improvement in symptoms despite the intervening surgery and despite medical records documenting such an improvement. Most of the pages of Ms. Stoutmeyer's second report appear to be photocopies of the exact same pages in the first report. (AR 334–349, 478–492.)

Petitioner argues that the medical records do not show that his condition improved after surgery, and therefore his wife's second report does not conflict with the medical evidence. Pet'r's Reply 9–10 (Dkt. 19). He cites evidence that he was treated for new pain and numbness less than three months after surgery. *Id.*

The Court is persuaded the ALJ did not offer a "germane reason" supported by the record when she discredited Ms. Stoutmeyer's reports. There is evidence that the Petitioner's condition improved, at least somewhat, following surgery – as noted by the ALJ, after surgery Petitioner "reported dramatic improvement in his leg pain, with some improvement in weakness and numbness." (AR 23, citing AR 739.) However, other evidence supports his claim of "new pain and numbness" after surgery. (AR 748–749.) Regardless, even post-surgery, the ALJ found Petitioner's degenerative disc disease to be a severe impairment. Thus, the record is clear that Petitioner's surgery did not resolve his back issues, so rejecting the function reports on the basis that they were inconsistent with medical records is neither correct in the manner used by the ALJ nor is a germane reason. Before and after surgery, Petitioner suffered from physical limitations resulting from his back issues. The ALJ simply did not explain how the function reports were inconsistent with the medical records. The Court finds the function reports to be consistent with the ALJ's separate finding that Petitioner's degenerative disc disease is a severe impairment.

Nor did the ALJ provide a germane reason when discounting Ms. Stoutmeyer's later function report merely because it duplicated an earlier one. Given the intervening surgery and the "new pain and weakness" that both occurred in the time between the two opinions, it is certainly conceivable the reports could have differed from each other. But the question here is whether it was error to reject them simply because they did not differ. The Court is persuaded this was error. In discounting such reports in the manner she did, the ALJ did not identify the context or full scope of the information contained in the reports and the compelling credibility of such statements. Instead, she discounted both reports in their entirety simply because she concluded they were identical to some lesser or greater degree. But she made no specific examination of the nature of the information in the reports to see if her criticism (that the report prepared later in time didn't consider improvement, whatever there may have been, from the earlier spinal surgery) justified the wholesale dismissal of both reports.

The two function reports were written by Petitioner's wife, who (at that time) had lived with Petitioner for about 8 years and had known him for 10 years. (AR 334, 478.) She said she spends "almost all day everyday" with Petitioner while they raise their child, manage their lives, and live together. (*Id.*) Her reports describe what Petitioner can and cannot do in daily life. They address things like his ability to care for himself and his household, his hobbies and social activities, and how his medical conditions affect his physical abilities. (AR 334–349, 478–492.) They do not go into detail regarding his medical diagnoses and they do not purport to contain objective medical findings (which further undermines the ALJ's rejection of them as inconsistent with the medical records). Thus, there is nothing inconsistent in Petitioner's wife expressing an opinion that his physical abilities several months after surgery were the same as his physical abilities a few months before surgery. Regardless of whether the surgery improved his

condition, he was nonetheless suffering from back issues – later found to be a severe impairment – at both points, and Ms. Stoutmeyer's opinions are generally consistent with the ALJ's finding to that effect. Moreover, the information in the reports is thoughtfully described, understandably explained, and the sincerity (and accompanying credibility) of the information she is providing permeates the reports. Thus, the ALJ erred by discrediting such opinions without providing a germane reason for doing so.

Relevant in all of this is the fact there is always a measure of humanity required to evaluate disability claims, brought as they are by people who are often in difficult and sometimes even desperate circumstances. Bringing a measure of humanity does not require that a court countenance a malingering claimant or believe a prevaricating one; however, when such disqualifiers are hard to find in a case, such as here, the statements of a claimant and his or her family members may be the clearest window into the critical truths of a disability appeal, especially on a cold record. Ms. Stoutmeyer's function reports offer such a window, including that found in the "remarks" section of the report. (AR 341, 485.) In that section, she wrote:

> …filling out this paper was/is extremely hard. Sharing or talking about the stress, hardships, misfortune, health, and mental aspects of your and your partner's lives on paper for who knows how many strangers to read and in a sense judge is degrading, sad, and difficult. No one is supposed to know what goes on behind locked doors, or in private…. The things I help my husband with are things that if discussed in open conversation would hurt his self esteem (it's paper thin these days) and would hurt his dignity and pride. No one wants to admit that they have problems… Only because he trusts me to help him and knows I would never make fun of him or hurt him is he willing to allow me to help. This was hard for me and him to actually admit all the problems out loud and to each other (these things we just accepted and had no need to discuss them). We are willing to because we need the help, [Petitioner] needs the help and so I ask you to be kind and understand where we are coming from and that we are not just another case. We are people too.

(AR 341, 485.)

Ultimately, of course, it is up to Respondent or his designated agent to evaluate lay witness testimony for persuasiveness, including by considering its consistency with the entire record. It is also the Respondent's duty to resolve conflicts in the record, which can be a daunting task against the sheer number of cases, each of which requires individualized attention. But the function reports, in this case, provided the ALJ with information that tends to corroborate, earnestly and humbly, Petitioner's claims regarding the extent of his physical limitations. It was error to dismiss such reports in a few short sentences that fail to withstand any even-handed scrutiny.

That is not to say that every sincere statement of the difficulties wrought by any severe impairment must be credited or that even if credited, will be sufficient to support a disability determination – there are, of course, multiple aspects to such an end and the framework and standards for showing entitlement to disability benefits are well-established and are not challenged here. But this case, and Ms. Stoutmeyer's remarks in particular, can serve as a reminder that those standards are applied to real people, many of whom are suffering greatly and have suffered for an extended period of time – whether they are ultimately found to be entitled to disability benefits or not. Here, for the reasons described above, the ALJ erred in discrediting Ms. Stoutmeyer's function reports.

**4. Remand is Necessary to Consider Whether Petitioner Can Work in the National Economy.**

Finally, Petitioner contends that the evidence of record supports his position that he would miss at least four days of work per month, be off-task more than 30% of the time, work 50% less effectively than an average worker, and require more breaks than an average worker. Pet'r's Mem. 19 (Dkt. 16). Per the vocational expert, such factors make a person ineligible to

work in the national economy.  *Id.*  Accordingly, Petitioner argues that the ALJ's finding that he can work in the national economy is not supported by substantial evidence.  *Id.*

As discussed *supra*, the ALJ erred in discrediting Petitioner's testimony by failing to provide specific, clear and convincing reasons supported by the record and in discrediting Petitioner's wife's lay opinions by failing to provide germane reasons.  The ALJ's finding that Petitioner can perform work in the national economy was based, at least in part, on her evaluation of Petitioner's testimony and Petitioner's wife's lay opinions.  Because the ALJ erred in her treatment of such evidence, the subsequent finding that Petitioner is capable of work cannot stand on this record.  Accordingly, the case will be remanded for Respondent to reevaluate Petitioner's testimony and Petitioner's wife's lay opinions.  On remand, the ALJ must either credit such evidence or provide sufficient justifications for discrediting it.[3]  Those decisions will, in turn, inform the subsequent question of whether Petitioner is capable of work in the national economy.

## IV. CONCLUSION

Petitioner has not shown that the ALJ committed reversible legal error regarding the severity of his impairments or the weighing of medical opinions.  However, Petitioner has shown error in the ALJ's weighing of Petitioner's own testimony and the weighing of lay evidence, which undermines the ALJ's decision regarding whether Petitioner is capable of work in the national economy.  Accordingly, the ALJ's decision is not supported by substantial evidence and it will be reversed and remanded for further proceedings consistent with this decision.

---

[3] The Court will not apply the "credit-as-true" rule in this case because the record is "uncertain and ambiguous" as to the appropriate weight of Petitioner's testimony and Petitioner's wife's lay opinions.  *See Treichler v. Comm'r*, 775 F.3d 1090, 1105 (9th Cir. 2014).

## V. <u>ORDER</u>

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **GRANTED,** the decision of the Commissioner is **REVERSED,** and this action is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: March 13, 2020

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge